Filed 8/16/16  In re T.S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re T.S., a Person Coming Under the Juvenile Court Law. | B262476 (Los Angeles County Super. Ct. No. TJ21932) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.S., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Catherine J. Pratt, Commissioner.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Is a personal property owner's agent permitted by the claim-of-right doctrine to unilaterally decide to use force to recover that personal property from the possession of a third party? The answer is no.  Accordingly, we affirm the juvenile court's order sustaining a Welfare and Institutions Code section 602 petition alleging that T.S. (minor) committed attempted second degree robbery (Pen. Code, §§ 664/211)[1] when, acting as the agent of a friend, minor used force in an attempt to take a skateboard away from a former schoolmate.  We reject minor's contentions that (1) the true finding of attempted robbery was unsupported by the evidence; (2) he was deprived of due process when the juvenile court determined that the claim-of-right defense was inapplicable; and (3) the juvenile court abused its discretion and deprived minor of the right to present a defense when it excluded witnesses who would have corroborated that his friend owned the skateboard, shed light on minor's specific intent, and impeached the alleged victim.  We find no error and affirm.

## FACTS

After the People filed a section 602 petition against minor, the matter proceeded to an adjudication hearing.

Daezhane C. (Daezhane) testified that a boy named Joshua D. (Joshua) gave her his skateboard.  Joshua, however, claimed it was a loan, and that he never told Daezhane that the skateboard was hers to keep.  In particular, he testified that he told her, "You can use it but I will need it back."  Per the testimony of Joshua and minor, minor was present when the skateboard exchanged hands.  Minor testified that Joshua said to Daezhane, "I'm going to let you borrow this skateboard so you can have transportation to your house."  According to minor, Joshua never told Daezhane that she could keep the skateboard.

As described by Daezhane, "[o]ne day [she and Joshua were] cool," and the next day they were not "cool anymore."  Both Daezhane and Joshua testified that he asked for the skateboard back, and that she refused.  Their testimony conflicted, however, as to

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

how many times Joshua made his request; while Daezhane said it was only "once," Joshua said that he asked her "[a]round ten times." Minor testified that he was with Joshua one time when he asked for the skateboard back, and Daezhane said it was at her grandmother's house.

On October 10, 2014, which was a year—possibly two or three—after Daezhane gained possession of the skateboard, Joshua testified that he told minor he was going to Daezhane's school to ask for the skateboard. They both went. Joshua testified that he was stopped by security, at which point he asked minor to talk to Daezhane. On cross-examination, Joshua said he brought minor to the school so he could be the one who spoke to Daezhane. Minor testified that Joshua and he went to the school "[t]o get the skateboard back," and when security "kicked Joshua out," Joshua asked minor to proceed with the task.

Minor approached Daezhane and demanded that she give the skateboard to him. The testimony as to what happened next was conflicting. Daezhane testified that minor pulled her to the ground and then held her there with his knee. A teacher testified that after Daezhane went down, minor hit her with his fist. Joshua testified that Daezhane shoved minor when he got near her and then tried to run away, prompting minor to grab her arms and tell her to calm down. Minor testified that after he asked for the skateboard several times, he grabbed it by the trucks, the metal portion of the skateboard that held the wheels and bearings. It was "sort of like a tug-of-war," he said. She pushed and shoved him, he explained, and then walked away. He claimed that he caught up to her, tried one more time to grab the skateboard, and then she fell to the ground. At that point, according to minor, Daezhane held the skateboard with both arms, and he kept trying to pull it away. He denied putting a knee on Daezhane, and he denied punching her. A teacher pulled Daezhane and minor apart, and minor said, "I just want my board."

On direct examination, minor was asked if Joshua told him he should "rough" Daezhane up, "or anything like that[.]" Minor said no.

At one point during the trial, the defense counsel indicated that she wanted to call three witnesses. As an offer of proof, defense counsel stated, inter alia, that one witness

3

would testify that she was minor's ex-girlfriend, and he was never violent with her; a second witness would testify that he was present when Joshua lent the skateboard to Daezhane, and that they had been trying to get the skateboard back from Daezhane for some time; and a third witness would testify that she was with Joshua one day when Daezhane would not return the skateboard.

The juvenile court commented that because the witnesses did not see the crime, their testimony would not be relevant. In rejoinder, defense counsel elaborated on what each of the witnesses would say. Further, inter alia, she argued that the testimony would be relevant to impeach Daezhane's statement that Joshua only asked for the skateboard back once, and it would be relevant to corroborate Joshua's testimony that he let Daezhane borrow the skateboard, not keep it. The juvenile court offered the following observations: "Well, assuming for a moment that the actual ownership of the skateboard is at issue which I, frankly, am not sure that it is, if that's the case, then it seems to me that the only relevant witnesses are the persons claiming ownership. Daezhane claim[s] ownership. Apparently, Joshua does, too. [¶] He's here to testify. . . . [¶] . . . [¶] The issue is whether or not the attempted robbery has been proven, and that focuses only on the issues that occurred on October 10th, and none of those [three proffered witnesses] were present on October 10th." Under Evidence Code section 352, the juvenile court excluded the three witnesses.

After closing arguments, the juvenile court indicated that the pivotal question was whether minor had a claim-of-right defense. The juvenile court concluded that he did not because the skateboard did not belong to him, and because Daezhane had a right to the skateboard as against minor.

The juvenile court sustained the section 602 hearing after finding that minor committed attempted second degree robbery.

Minor was placed on probation.

This timely appeal followed.

4

**DISCUSSION**

**I. Sufficiency of the Evidence.**

Minor contends that because he made a good faith attempt to recover the skateboard for Joshua, the juvenile court should have found that the claim-of-right defense was applicable. We disagree because the underlying facts do not support a claim-of-right defense.

A. Standard of Review.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.)

B. Robbery; Attempt Crimes.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "The common law understanding of the 'felonious taking' element of larceny and robbery . . . includes the concept that '[a] person may be a victim of larceny even though he is not the owner [of the property taken]; he need only have a special property right, as in the case of a bailee or pledgee. It is enough that he has possession and that it is lawful as to the defendant, or that because of a legally recognized interest in the property he is entitled to possession as against the defendant. Moreover, the person from whom the property is taken qualifies as a victim of larceny even though he does not have the right of possession as against the true owner.' [Citation.]" (*People v. Smith* (2009) 177 Cal.App.4th 1478, 1490.) "California has long followed the common law in this regard." (*Id*. at p. 1491.)

An attempt to commit a crime involves specific intent to commit the crime, and a direct but ineffectual act done toward its commission. (§ 21a; *People v. Medina* (2007) 41 Cal.4th 685, 694.)

5

C. The Claim-of-Right Defense.

"The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery." (*People v. Tufunga* (1999) 21 Cal.4th 935, 938 (*Tufunga*); *People v. Lain* (1943) 57 Cal.App.2d 123, 130 [felonious intent element negated "'when the owner takes his own specific property from the possession of another'"].)  This defense is incorporated into the statutory scheme, which means that courts must recognize it whether or not they deem it to be a wise policy. (*Tufunga*, *supra*, pp. 938–939.)  As explained in *People v. Williams* (2009) 176 Cal.App.4th 1521, 1528 (*Williams*), the defense extends to certain nonowners.  Per that case, "a good faith belief by a defendant, tried as an accomplice, that he was assisting his coprincipal retake the principal's property negates the 'felonious intent' element of both larceny and robbery[.]"[2]  This is because there can be no aiding and abetting liability unless a person "'acted with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.]" (*Id.* at p. 1528.)  The court observed that it "would defy logic and common sense to hold that a defendant who absconds with goods by force under a good faith belief that he was repossessing his own property does not thereby commit robbery, but that his accomplice, who assists him in the same act and shares the same intent, may be found guilty." (*Ibid*.)

Other than *Williams*, the appellate courts have limited the claim-of-right defense to the scope envisioned by the Legislature, i.e., to "robberies in which the defendant sought to recover specific property for which he believed in good faith he had a bona fide claim

---

[2]    The parties to a crime are classified as either principals or accessories.  (§ 30.) "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed." (§ 31.)  The reference in *Williams* to a coprincipal was to a second principle in a crime, not to some new category of participant in a crime.

of ownership or title[.]" (*Tufunga*, *supra*, 21 Cal.4th at pp. 953–954, fn. 5.)  In *Tufunga*, the court explained that "'"[i]t is a general principle that one who is or believes he is injured or deprived of what he is lawfully entitled to must apply to the state for help. Self-help is in conflict with the very idea of social order.  It subjects the weaker to risk of the arbitrary will or mistaken belief of the stronger.  Hence the law in general forbids it."'" [Citation.]" (*Tufunga*, *supra*, at pp. 952–953.)  The court added that the "legitimacy of the need for our laws to discourage forcible or violent self-help as a remedy seems beyond question." (*Id*. at p. 953.)

D.  Analysis.

Whether the claim-of-right defense can be invoked by minor depends upon whether this case is analogous to *Williams*.

In *Williams*, the defendant went to the apartment of a woman named Marlene and knocked on her door.  Defendant was accompanied by his brother, Kendall, who was Marlene's ex-boyfriend, and a man named Holmes.  After Marlene opened the door and saw who was there, she tried to close it.  The defendant pushed the door open so that Kendall and he could gain entry.  As instructed by Kendall, the defendant pulled a gun out of his waistband.  He waved the gun around and said, "'You thought this was a game'" and "'Bitch, you stole my brother's car.'" (*Williams*, *supra*, 176 Cal.App.4th at p. 1525.)  Kendall demanded that Marlene surrender her car keys and a laptop computer. She pointed him to the car keys.  Kendall grabbed the keys and the men left.  One of the three men drove away in Marlene's car, which contained her laptop computer and other personal items. (*Ibid*.)  Because the defendant was tried on the theory that he aided and abetted Kendall in stealing property that belonged to Marlene, and because there was an open question as to whether Kendall or Marlene owned the property taken, the *Williams* court concluded that the trial court should have instructed the jury on the claim-of-right defense. (*Id*. at pp. 1527–1528.)

The case at bar and *Williams* are readily distinguishable.  In *Williams*, "[t]he evidence showed [that the defendant and Kendall] acted in concert to take property by force or fear." (*Williams*, *supra*, 176 Cal.App.4th at pp. 1527–1528.)  They entered

7

Marlene's apartment together, Kendall instructed the defendant to pull his gun, the defendant waved his gun while uttering accusations, and Kendall demanded and obtained Marlene's car keys. All of that indicated a shared plan. Here, in contrast, Joshua did not act in concert with minor. Though Joshua asked minor to go to the school to ask Daezhane for the skateboard back, Joshua never indicated a plan of using force or fear to recover the skateboard, nor did he instruct minor to engage in any threatening or forceful act. Moreover, Joshua was detained by campus security, so he was not with minor at the moment that he confronted Daezhane and tried using force to retrieve the skateboard. Procedurally, we note that minor, unlike that defendant in *Williams*, was not charged with aiding and abetting another. Inescapably, the facts of this case do not fall within the narrow holding of *Williams*.

If *Williams* does not preserve minor's defense, he urges that he can take refuge in footnote dicta in *People v. Anderson* (2015) 235 Cal.App.4th 93 (*Anderson*). But that dicta does not aid minor's cause. There, a woman named Thomas gave a friend named Watson an electronic benefit transfer (EBT) card and said she could spend "'$200 off the EBT card'" to absolve part of a drug debt that Thomas owed to Watson's roommate, a man named Moore. (*Id.* at p. 96.) Instead of shopping, Watson and Moore took the EBT card back to their apartment. The defendant showed up with a gun and reclaimed the EBT card. Evidence favorable to the prosecution established that he hit Moore over the head with a hard object of some kind. (*Id.* at pp. 96–99.) The defendant was convicted of, inter alia, burglary and robbery. (*Id.* at p. 95.)

On appeal, the defendant argued that "he was entitled to a claim-of-right instruction based on the evidence that he was assisting Thomas in recovering her EBT card when he forcefully took the card from Moore." (*Anderson*, *supra*, 235 Cal.App.4th at p. 101.) He suggested that "if he believed the card rightfully belonged to Thomas when he recovered it, his belief would negate the specific intent required to support his burglary and robbery convictions." (*Ibid*.)

In a footnote, the court noted that defendant's trial counsel "contended that [the defendant] was entitled to the claim-of-right instruction as Thomas's agent. Trial counsel

8

argued: '[The defendant] was acting as an agent of [Thomas] by accompanying [Thomas] to the house, going up the elevator with [Thomas]. [Thomas] showed [the defendant] the door where Greg Moore and Niya Watson live. [Thomas] then walked down to the elevator and waited while [the defendant], as an agent for [Thomas], knocked on the door to get the EBT card.'" (*Anderson*, *supra*, 235 Cal.App.4th at p. 101, fn. 4.) At oral argument, the defendant's appellate counsel "stated that [the defendant] was not claiming that he had acted 'as an agent of a putative third party owner,' but rather, that he was effectively an accomplice of Thomas, since she had 'recruited' him to go to Moore and Watson's apartment with her to retrieve the EBT card. Counsel argued that *Williams* applie[d] . . . because Thomas was a 'de facto accomplice' who could have been charged with the robbery along with [the defendant]. Counsel admitted that [the defendant's] trial counsel did not make this argument to the trial court." (*Ibid.*) When asked for evidence that Thomas "had done anything to instigate the trip to Moore and Watson's apartment," counsel "cited the evidence that Thomas told [the defendant] that Moore snatched the card from her, and that she told [the defendant] how to get to the apartment." (*Ibid.*)

In the same footnote, the court adverted to the People's statement at oral argument that there was no evidence that the defendant was an aider and abettor. The court noted that the defendant answered "'yes'" when the police asked him if "'it was all you.'" (*Anderson*, *supra*, 235 Cal.App.4th at p. 101, fn. 4.) Also, he admitted that "he 'decided to do it.'" (*Ibid.*) "He further admitted that he 'asked [Thomas] to point out the apartment for [him]' and told Thomas and Sawyer to 'wait off to the side' because he did not want them to be involved in his 'getting the EBT card back.'" (*Ibid.*) According to the court, the record did not "support . . . [defense] counsel's assertion at oral argument that Thomas 'recruited' [the defendant] to retrieve her EBT card and act[] as his accomplice in the commission of the charged offenses." (*Ibid.*)

The court stated, "[The defendant] would thus have us hold that the claim-of-right defense extends to a defendant who acts to recover property as an agent of the owner of the property just as it does to a defendant who aids and abets the owner in the recovery of his or her property. We decline to extend the claim-of-right defense that far." (*Anderson*,

9

*supra*, 235 Cal.App.4th at p. 101, fn. omitted.) It then held that the public policy of discouraging forcible or violent self-help as a remedy "precludes extension of the claim-of-right defense to a defendant who has no right or claim of ownership to the property that he is accused of stealing, and who maintains that he acted as an agent of a third party who was the rightful owner of the property but was not a coprincipal in the commission of the charged offenses." (*Id.* at p. 102.)

In dicta in a subsequent footnote, *Anderson* stated, "We do not hold that the claim-of-right defense can never be available to a defendant charged with theft or robbery where there is evidence that the defendant took the subject property on behalf of a third party whom the defendant believed to be the rightful owner of the property. There may be circumstances where the defendant acts on behalf of a third party and the rationale for the defense outweighs the public policy against forcible self-help." (*Anderson*, *supra*, 235 Cal.App.4th at p. 102, fn. 5.)

Minor argues that he was acting at Joshua's behest, and therefore "this case presents the set of circumstances that [the] *Anderson* court believed [would give rise to] a claim-of-right defense[.]" In minor's view, he was recruited by Joshua to accompany him to the school to get the skateboard back and, as a result, he was nothing like the defendant in *Anderson* who unilaterally decided to go to the apartment to get the EBT card back. We disagree because minor took it upon himself to use force against Daezhane, and when he did, he was acting as an agent for, but not at the direction of, Joshua.[3] Thus, like the defendant in *Anderson*, minor was not recruited to be an accomplice in the charged offense. Also like the defendant in *Anderson*, minor unilaterally decided to use force in order to obtain personal property from a third party. As established by *Anderson*, public policy precludes extension of the claim-of-right defense to an agent who acts in this manner.

---

[3] Joshua specifically testified that he brought minor to school "[n]ot necessarily to roughen up [Daezhane], but just to go talk to her and get my skateboard back because I really wanted [my] skateboard back."

Beyond the foregoing, *Anderson* did not decide when or if the defense can be asserted outside the confines of the *Williams* holding. It is a core principle of our jurisprudence that cases are never considered authority for propositions not considered. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.) For this additional reason, *Anderson* does not aid minor's appeal.

In his reply brief, minor argues that even though Joshua never endorsed force as a means of minor getting the skateboard back, neither did not he proscribe it, and therefore the use of force remained within the universe of possibilities. In this situation, he suggests, it would be proper to recognized the claim-of-right defense. This suggestion is easily rejected. Giving an agent license to freely infer that a property owner wants him or her to use force to recover property would encourage physical altercations, making society less safe. We perceive no sound public policy reason to extend the claim-of-right defense in the manner advocated. As intimated by *Tufunga*, we want people to eschew self-help in favor of help from the state.

## II. Due Process and Admissibility Issues Related to the Three Excluded Witnesses.

Minor argues that he was denied due process when the trial court excluded three witnesses and misapplied the law, and that the exclusion of the three witnesses also constituted an abuse of discretion. Each of these arguments depends upon the claim-of-right defense being available to minor. Given that we have determined that the defense is not available, these arguments fail.

A. Due Process.

A criminal defendant has a due process right to a fair trial. Subsumed within that is the right "to present all relevant evidence of *significant* probable value to his defense." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.) In addition, it violates a criminal defendant's right to due process if a trial court relieves a prosecutor of the burden of proving every element of an offense beyond a reasonable doubt. (*People v. Thomas* (2013) 218 Cal.App.4th 630, 644.)

According to minor, his right to a fair trial was violated when the juvenile court excluded witness testimony that would have: corroborated Joshua's testimony that he

11

was the owner of the skateboard and had tried to recover the skateboard on multiple occasions; shed light on minor's specific intent when he tried to take the skateboard; and impeached Daezhane. This argument is unavailing because it is based on the faulty premise that any of this evidence was relevant. It was not. The robbery statute is violated if a person uses force or fear to take personal property from another person's possession. It is undisputed that Daezhane was in possession of the skateboard. It is also undisputed that minor used force in an attempt to take the skateboard away from Daezhane. Thus, minor was guilty regardless of whether Joshua or Daezhane owned the skateboard, regardless of whether minor specifically intended to recover the skateboard for Joshua, and regardless of whether Daezhane was telling the truth that Joshua gave her the skateboard. And insofar as minor contends that the three witnesses were relevant to the claim-of-right defense, that argument was waived because it was not asserted at the time of the juvenile court's ruling. (*Hepner v. Franchise Tax Bd*. (1997) 52 Cal.App.4th 1475, 1486 [points not raised below are waived].) In any event, minor had no claim-of-right defense unless he was the owner of the skateboard, or he fell within the *Williams* holding. He never contended that he was the owner. Moreover, as we have already discussed, he does not fall within the *Williams* holding.

Next, minor contends his due process rights were violated when the juvenile court misapplied the law regarding the claim-of-right defense. He discusses law establishing that a trial court violates due process if it fails to give jury instructions concerning a defendant's theory. That law, of course, is not apropos given that this was a juvenile matter, and a bench officer was the trier of fact. Inferentially, minor's complaint is that due to the claim-of-right defense, it was impossible for the prosecutor to establish the requisite intent element of the charged crime. Nonetheless, because the trial court misapplied the law, it effectively lessened the prosecutor's burden regarding the intent element. But the claim-of-right defense was not available to minor, so the juvenile court did not lessen the prosecutor's burden.

12

B.  Admissibility.

Minor posits that the juvenile court abused its state law discretion under Evidence Code section 352[4] when it excluded the three witnesses.  We note that even though the juvenile court invoked Evidence Code section 352, it excluded the witnesses because they did not see the attempted taking of the skateboard.  In other words, the juvenile court excluded the witnesses because their proffered testimony was irrelevant.  Based on the circumstances of the ruling and the posture of the case, we can find no fault with the juvenile court's ruling.  Minor posits that the proffered testimony was pertinent to Joshua's ownership of the skateboard, minor's specific intent and Daezhane's veracity, and that those issue were pertinent to whether he established the claim-of-right defense.  Given the claim-of-right defense was not available to minor, the testimony of the three witnesses was not relevant.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                    ASHMANN-GERST

We concur:


_____, P. J.
          BOREN


_____, J.
          CHAVEZ

---

[4]     Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

13